Scott Edward Cole, Esq. (S.B.# 160744)
Laura Van Note Esq. (S.B.# 310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:     (510) 891-9800
Facsimile:     (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com

Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone:     (866) 252-0878
Email: gklinger@milberg.com

*Plaintiffs' Interim Co-Lead Class Counsel*

*Additional Counsel listed on the Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PRUTSMAN, AMIRA MARTZ, SIMCHA RINGEL, NAIOMI MARDEN, ALANA BALAGOT, CORINNE WARREN, SUNNY LAI, AND DAVID KLEIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFFS, <br><br> VS. <br><br> NONSTOP ADMINISTRATION AND INSURANCE SERVICES, INC.; INCLUSIVE, <br><br> DEFENDANT. <br><br><br> This Document Relates To: All Actions | Case No. 3:23-CV-01131-RFL <br><br> **PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** <br><br><br> Date:        October 15, 2024 <br> Time:        10:00 A.M. <br> Courtroom:    15 – 18th Floor <br> Judge:       Hon. Rita F. Lin |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................ iv

I.    PRELIMINARY STATEMENT ............................................................................ 2

II.    ISSUES TO BE DECIDED .................................................................................. 2

III.    STATEMENT OF FACTS ................................................................................... 2

IV.    PROCEDURAL HISTORY.................................................................................. 3

V.    THE SETTLEMENT TERMS.............................................................................. 4

    A.  Proposed Settlement Class Definition ................................................... 4

    B.  Settlement Benefits – Monetary Relief.................................................. 5

        1.  Out of Pocket Loss Reimbursement Claims .............................. 5

        2.  California Statutory Claim Payments ......................................... 6

        3.  Alternative Cash Payments ......................................................... 6

    C.  Non-Monetary Settlement Benefits ....................................................... 6

    D.  Class Notice and Settlement Administration ......................................... 7

    E.  Attorneys' Fees and Representative Plaintiffs' Service Awards ........................................ 8

    F.  Comparison of Settlement Benefits Against Full Recovery ................................. 9

    G.  Release ................................................................................................. 10

VI.    ARGUMENT ...................................................................................................... 11

    A.  The Settlement Satisfies Rule 23(a)..................................................... 12

        1.  The Proposed Class is Sufficiently Numerous........................... 12

        2.  The Settlement Class Satisfies the Commonality Requirement ................. 12

        3.  Plaintiffs' Claims and Defenses are Typical to Those of the Class............ 13

        4.  Plaintiffs Will Adequately Protect the Interests of the Class..................... 13

    B.  The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes ............................ 14

1.  Common Questions Predominate ................................................................. 14

2.  Class Action is Superior to Other Methods of Adjudication ...................................... 15

C.  The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e) ..................... 16

1.  The Strength of Plaintiffs' Case ................................................................. 17

2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ............. 18

3.  The Risk of Maintaining Class Action Status Through Trial ...................................... 18

4.  The Amount Offered in Settlement ................................................................. 19

5.  The Extent of Discovery Completed and the Stage of Proceedings .......................... 20

6.  Class Counsel's Experience and Views ................................................................. 21

7.  Governmental Participants ................................................................................. 21

8.  The Reaction of the Class Members to the Proposed Settlement ............................... 21

9.  Lack of Collusion Among the Parties ................................................................. 21

D.  The Court Should Approve the Proposed Notice Program ................................................ 22

E.  Appointment of the Settlement Administrator ................................................................ 23

F.  Appointment of Settlement Class Counsel ...................................................................... 23

VII.   CONCLUSION ............................................................................................................. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### <u>CASES</u>

4

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................. 12, 14

*Bykov v. DC Transp. Servs., Inc*.,
  No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) ......................... 16

*Calderon v. Wolf Firm*,
  No. SACV 16-1622-JLS (KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018)........... 19

*Celano v. Marriott Int'l Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ................................................................................... 12

*Chester v. TJX Cos*., *Inc.*,
  No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ........... 18

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992)........................................................................................ 11

*Cochran v. Kroger Co.*,
  No. 5:21-CV-01887-EJD, 2022 WL 2126696 (N.D. Cal. Mar. 24, 2022)..................... 19

*Dennis v. Kellogg Co*.,
  No. 09-cv-1786-L (WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)..................... 18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ....................................................................................................... 22

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)..................................................................................... 12, 13

*Franklin v. Kaypro Corp*.,
  884 F.2d 1222 (9th Cir. 1989) ....................................................................................... 17

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982).......................................................................................... 17

*Gribble v. Cool Transps. Inc*.,
  No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ............... 16

*Grimm v. Am. Eagle Airlines, Inc.*,
  No. LA CV 11-00406 JAK (MANx), 2014 WL 1274376 (C.D. Cal. Sept. 24, 2014) .... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)................................................................ 13, 14, 17

*Hartranft v. TVI, Inc.*,
No. 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) ...................................... 23

*Hillman v. Lexicon Consulting, Inc.*,
No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017)...................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)................................................................ 17

*In re Brinker Data Incident Litig.*,
No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)................................. 18

*In re Facebook Biometric Info. Priv. Litig.*,
No. 15-cv-03747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021).................................... 8

*In re Google LLC St. View Elec. Commc'ns Litig.*,
No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)........................ 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)................................................................ 14

*In Re Marriott Int. Inc. Customer Data Security Breach Litig.*,
No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022)........................................ 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................ 8

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................................ 16

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .................................... 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................ 9

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017)................................................................ 15

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ............................................................ 14

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998)................................................................ 20

---

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:23-CV-01131-RFL

*Local Joint Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands, Inc*.,
    244 F.3d 1152 (9th Cir. 2001) ........................................................................................ 15

*Malta v. Fed. Home Loan Mortg. Corp.*,
    No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ....................................... 15

*Meyer v Portfolio Recovery Assocs.*,
    707 F.3d 943 (9th Cir. 2012) ........................................................................................ 13

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ..................................................................................... 17

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................... 21

*Norton v. Maximus, Inc.*,
    No. 1:14-cv-0030 WBS, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ........................................ 21

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................. 22

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) ................................... 16

*Smith v. Triad of Ala.*, LLC,
    No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) ...................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .............................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...................................................................................... 15

**STATUTES**

Cal. Civ. Code Ann. § 1798.150(a)(1)(A) ............................................................................. 10

Cal. Civ. Code § 56 .................................................................................................... 3

Cal. Civ. Code §§ 1798.100 ............................................................................................ 3

Cal. Civ. Code §§ 1798.80 ............................................................................................. 4

**RULES**

Fed. R. Civ. P. 23 ................................................................................................... 12, 13, 23

Fed. R. Civ. P. 23 23(c)(2) ................................................................................................ 22

Fed. R. Civ. P. 23(a) ........................................................................................... 12, 13, 14

Fed. R. Civ. P. 23(a)(3) ..................................................................................................... 13

Fed. R. Civ. P. 23(a)(4) ..................................................................................................... 13

Fed. R. Civ. P. 23(b)(1), (2) or (3) ................................................................................... 14

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 14, 15, 22

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 22

Fed. R. Civ. P. 23(e) ................................................................................................... 16, 17

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 16

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................ 22

Fed. R. Civ. P. 23(e)(2) .................................................................................................. 2, 16

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ...................................................................................... 23

Fed. R. Civ. P. 23(g)(1)(B) ............................................................................................... 23

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (Fourth), § 21.632 ................................................... 11, 12

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 15, 2024 at 10:00 A.M., or as soon thereafter as counsel may be heard, before the Honorable Rita F. Lin, at San Francisco Courthouse, Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs seek provisional certification of the Settlement Class, appointment of undersigned counsel as Settlement Class Counsel, appointment of the named Plaintiffs in the consolidated actions as Class Representatives, and preliminary approval of the proposed Class Action Settlement.

Plaintiffs base their Motion for Preliminary Approval of Class Action Settlement on this Notice; the Memorandum of Points and Authorities filed in support thereof; the Settlement Agreement and Release ("Settlement Agreement") and all Exhibits thereto; the Joint Declaration of Gary M. Klinger and Scott E. Cole in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl."); the Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Preliminary Approval ("Passarella Decl."), all other records and papers on file in this action; any oral argument on the Motion; and all other matters properly before the Court.

Plaintiffs seek an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class more fully described in the Settlement Agreement, attached hereto as **Exhibit 1**; preliminarily approving the Settlement as fair, reasonable, and adequate; directing Class Notice to be disseminated to the Settlement Class in the form and manner proposed by the parties as set forth in the Settlement Agreement and attached to the Settlement Agreement as **Exhibit B** thereto; appointing Kroll Settlement Administration LLC to serve as the Settlement Administrator; appointing Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsels' forthcoming motion for an award of fees, costs, expenses, and service awards.

I.      **PRELIMINARY STATEMENT**

Plaintiffs John Prutsman, Amira Martz, Simcha Ringel, Naiomi Marden, Alana Balagot, Corrine Warren, Sunny Lai, and David Klein, individually, (collectively "Plaintiffs") and on behalf of all others similarly situated ("Class Members") have reached an agreement with Defendant Nonstop Administration and Insurance Services, Inc. ("Defendant" or "Nonstop") to settle claims on behalf of Plaintiffs and Class Members stemming from a Data Breach[1] that Nonstop experienced in December of 2022. The settlement is the product of hard bargaining, including a full day of mediation before Bennett G. Picker of Stradley Ronan, that ultimately resulted in the settlement now before this Court. Moreover, mediation was only entered into after Nonstop shared critical informal discovery that included a detailed technical narrative of the Data Breach, information as to the data elements involved for the whole class, and information about the class size and distribution of Class Members across the states. Plaintiffs now ask that the Court preliminarily approve the Settlement Agreement as fair and reasonable so that notice under FRCP 23(e)(2) may be provided to the Class Members. A proposed order has been submitted herewith.

II.     **ISSUES TO BE DECIDED**

1.      Whether the Settlement Class should be provisionally certified;

2.      Whether the proposed Class Action Settlement should be preliminarily approved;

3.      Whether notice should issue to the Settlement Class;

4.      Whether the named Plaintiffs in the consolidated actions should be named as Class Representatives, and

5.      Whether the undersigned Plaintiffs' Counsel should be appointed as Settlement Class Counsel.

III.    **STATEMENT OF FACTS**

Nonstop is an employee health insurance and benefits broker. Nonstop provides health insurance solutions nationwide, previously to exclusively nonprofit organizations, but it has since

---

[1] Capitalized terms have the same meaning as the Settlement Agreement unless otherwise noted.

expanded to make its services available to a variety of organizations. As part of its business, Nonstop collects and stores the sensitive private data of Plaintiffs and Class Members including, but not limited to, their names, dates of birth, genders, physical and email addresses, telephone numbers, Social Security numbers, medical treatment/diagnosis information and health insurance providers, claims and billing information ("Private Information" or "PI"). On or about December 22, 2022 an unknown party contacted Nonstop and stated that it had accessed Nonstop's systems. Nonstop investigated, and confirmed, that the unauthorized party had accessed its cloud service platform. In the course of this Data Breach Plaintiffs' and Class Members' PI was accessed and exfiltrated by cybercriminals, who later posted some amount of that PI on the dark web. In total, the PI of 115,649 Nonstop customers, including Plaintiffs and 45,236 California residents, was impacted in the Data Breach.

On or about February 22, 2023 Nonstop began sending notice of the Data Breach to Plaintiffs and approximately 115,649 other individuals whose PI is believed to have been exposed in the Data Breach. This includes approximately 45,236 residents of California.

## IV.   PROCEDURAL HISTORY

On March 14, 2023, Plaintiff Prutsman, individually and on behalf of all others similarly situated, filed a class action complaint in the Northern District of California. Plaintiff Lai filed his Complaint on March 21, 2023, and Plaintiffs Prutsman and Lai then filed a motion to consolidate on March 29, 2023. This Court granted that motion and consolidated all the then extant cases on May 4, 2023. Thereafter on May 25, 2023 Plaintiffs Prutsman, Martz, Ringel, Marden, Balagot, Warren, Lai, and Klein filed their Consolidated and Amended Complaint ("CCAC"). Defendant filed its Motion to Dismiss the complaint on June 15, 2023, and this Court granted in part and denied in part Defendant's Motion to Dismiss on August 16, 2023, with Defendant then Answering the Complaint on September 9, 2023. The CCAC asserts six claims that survived Defendant's Motion to Dismiss: i.e., (1) negligence; (2) breach of implied contract; (3) declaratory judgment; (4) violations of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100, et seq.; (5) violations of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq.; and (6) violations of the

California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*. CCAC, ¶¶ 114-287; *see also* ECF No. 54. On January 24, 2024 the Court Referred this matter to Private ADR.[2]

Thereafter, the Parties exchanged Rule 408 discovery as well as formal discovery, and on June 6, 2024, the Parties engaged in a full day mediation session with the highly regarded private mediator Bennett G. Picker of Stradley Ronon, who is not just highly regarded but also very experienced in data breach matters. After a full day of hard bargaining on both sides, the Parties were able to reach a resolution in principle to settle this matter for a non-reversionary common fund of one million, six hundred thousand dollars ($1,600,000). Over the next several months the Parties continued to negotiate and on September 11, 2024 memorialized the terms of their agreement in the instant Settlement Agreement (Exhibit 1), which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the risks inherent in litigating this action, and with the active involvement of the Parties.

## V.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class Definition

The proposed nationwide class definition for settlement purposes is defined as "all individuals within the United States of America whose PHI/PII was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on or about December 22, 2022." S.A. ¶ 3. This is the same definition used in the Consolidated Class Action Complaint.[3]

The Settlement Class excludes "(1) the Judge and Magistrate Judge presiding over the Action, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members  and shareholders of Defendant; (3) persons who timely and

---

[2] On November 20, 2023 Nonstop filed a Third-Party Complaint (ECF 62) against third-party Defendants John Doe and Conor Brian Fitzpatrick. The instant settlement does not address claims against either third-party Defendant and as such, none of the procedural history regarding same is recited herein.

[3] The Complaint also contained various state subclasses which are not relevant as they related to claims that have been dismissed (*see* ECF No. 54), other than the California Subclass, which is not necessary to be segregated from the proposed Class in order to be accorded full relief under this settlement.

validly request exclusion from and/or opt-out of the Settlement Class; (4) the successors and assigns of any such excluded persons; and (5) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Breach or who pleads nolo contendere to any such charge. S.A. ¶ 3.[4]

### B.   Settlement Benefits – Monetary Relief

Defendant has agreed to establish a one million, six hundred thousand dollar ($1,600,000) non-reversionary cash settlement fund (the "Settlement Fund"), which will be used first to pay the approved costs of settlement administration and notice, the approved attorneys' fees and expenses, and any approved service awards. The remaining funds will then be applied until exhausted in the following order: (1) claims for out-of-pocket loss reimbursement of up to $5,000 per valid claim, (2) cash payments to California Settlement Class Members of up to $100 per valid claim, and (3) Alternative Cash Payments of approximately $50 made from any money remaining in the Settlement Fund after paying all other expenses and costs, and shall be increased or decreased *pro rata* to expend all funds remaining in the Settlement Fund. S.A. ¶ 42.

### 1.   Out of Pocket Loss Reimbursement Claims

Every Settlement Class Member may submit a claim for up to $5,000 each for out-of-pocket expenses and losses, which are unreimbursed costs, expenditures, or losses incurred by a Settlement Class member that are fairly traceable to the Data Breach ("Out-of-Pocket Losses"). S.A. ¶ 43(A). Settlement Class Members who elect to submit a claim for reimbursement of Out-of- Pocket Losses must provide to the Settlement Administrator information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; or (3) an attestation and a brief description of out-of-pocket expenses and how they were incurred. *Id.* Documentation supporting Out-of-Pocket Losses can include receipts or other

---

[4] The exclusions in the Settlement Agreement are more narrowly and specifically defined than the exclusions in the Consolidated Complaint. *Compare* S.A. ¶ 3, *with* CCAC, ¶ 52.

documentation not "self-prepared" by the Settlement Class Member concerning the costs incurred.[5] *Id.*

### 2. California Statutory Claim Payments

California Settlement Class Members may submit a claim for a $100 cash payment as a result of the statutory CCPA claim available to them as California residents. S.A. ¶ 42 (C). The California Statutory Claim Payment for California residents is in addition to any other Settlement benefits available. *Id.* The California Statutory Claim Payment may be *pro rata* decreased if insufficient funds remain in the Settlement Fund following the payment of Attorneys' Fees and Expenses Award, any Service Award, the Costs of Administration and Notice, the CAFA Notice, and claims for Reimbursement of Out-of-Pocket Losses. *Id.*

### 3. Alternative Cash Payments

All Settlement Class Members may elect to file a claim for an Alternative Cash Payment, rather than seek reimbursement for Out-of-Pocket Losses. S.A. ¶ 42 (B). The amount of this benefit shall be *pro rata* increased or decreased based on the funds remaining in the Settlement Fund following the payment of Attorneys' Fees and Expenses Award, any Service Award, the Costs of Claims Administration, claims for Out-of-Pocket Losses, and the California Statutory Claim Payments but is estimated to be approximately $50. *Id.*

### C. <u>Non-Monetary Settlement Benefits</u>

Nonstop shall take, or has already taken, certain reasonable steps to further secure its systems and environments and Defendant will provide Class Counsel with a confidential declaration detailing the same. S.A. ¶ 42 (D).

Nonstop is responsible for all costs associated with implementing and maintaining these Business Practices Changes, which costs are separate and apart from the Settlement Fund. *Id.*

---

[5] "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to clarify or support other submitted documentation. S.A. ¶ 43(A).

**D.**   <u>**Class Notice and Settlement Administration**</u>

The cost of class notice and settlement administration will be paid from the Settlement Fund (subject to Court approval). S.A. ¶ 36. As described in the Settlement Agreement, the notice program shall include a Postcard Notice and a Long Notice (Exhibit B), Claim Form (Exhibit A), and the establishment of a Settlement Website. S.A. ¶ 49.

In an attempt to obtain a higher claims rate, the Parties have negotiated a robust notice program. No later than ten (10) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the information necessary to mail the Postcard Notice to Settlement Class Members (collectively, "Class Member Information"). S.A. ¶ 48. The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Passarella Decl. ¶ 14. Except to administer the settlement as provided in this Settlement Agreement or provide all data and information in its possession to the Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information. *Id.* ¶ 20. The Settlement Administrator shall delete all information associated with this Litigation when it no longer has a legal requirement to retain such data. *Id.* Moreover, the Settlement Administrator shall at all times comply with the Northern District of California Settlement Administration Data Protection Checklist.

By the Class Notice Date, the Settlement Administrator shall begin circulating the Postcard Notice via United States Postal Service to the approximately 115,649 Class Members for whom Nonstop has mailing addresses, which process will be completed by the Class Notice Date. *See* S.A. ¶ 49. In the event that a Postcard Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall forward the Postcard Notice to the forwarding address. *Id.* In the event a notice is "returned to sender" without a forwarding address, the Settlement Administrator will

perform a skip trace on the Class Member and attempt to locate a valid address so that the notice can be resent. *Id.*

Before the dissemination of the Short Notice, the Settlement Administrator shall establish a settlement website that will inform members of the Settlement Class of the terms of the Settlement Agreement, their rights, dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, relevant case filings, including the Class Notice, the Claim Form, the Preliminary Approval Order, the Settlement Agreement, the Complaint, and any other materials agreed upon by the Parties and/or required by the Court. *Id.* ¶ 31. Additionally, the Settlement Administrator will establish a toll-free telephone number with recorded answers to commonly asked questions about the settlement and the ability to leave a message and request a call back. *Id.* ¶ 49.

Class Counsel, based on their experience with data breach cases and in consultation with the Settlement Administrator about the claims process in this case, anticipate that there will be a claims rate in this case of between 1-10 percent of the Class (in other words, roughly 1,156 to 11,565 claims). *Lutz v. Electromed, Inc.*, No. 21-CV-02198 (D. Minn.) (Doc. 67 at 9) (roughly 4 percent claims rate, 1,854 out of 46,405, in non-reversionary common fund settlement including *pro rata* cash payments). This comports with previous statements by this District. *See, In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%).

### E.    <u>Attorneys' Fees and Representative Plaintiffs' Service Awards</u>

Class Counsel has agreed not to request more than one-third (1/3) of the Settlement Fund as reimbursement for attorneys' fees plus reasonable litigation costs and expenses. S.A. ¶ 23. The Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See, In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery). Such fees are even more reasonable here given that Defendant is providing valuable non-cash benefits to the Class in the form of its business practice changes, separate from the Settlement Fund, which

adds substantial value to the Settlement, making Class Counsel's anticipated fee request represent substantially less than 1/3 of the Settlement Fund. *See* Joint Decl. ¶ 30.

To date, Class Counsel have, thus far, accrued a lodestar of roughly $477,516.60, which includes 829.5 collective hours to date spent investigating the Data Breach pre-suit, drafting the various pleadings in this matter, successfully opposing Defendant's Motion to Dismiss as regards the remaining causes of action, post-suit informal discovery and investigation, extensive settlement negotiations, communicating with Plaintiffs, finalizing the terms of the Settlement Agreement, and drafting and filing preliminary approval filings. Joint Decl. ¶ 31. Class Counsel anticipates accruing additional lodestar totals to get this case through confirmatory discovery, settlement administration, final approval, appeal and any other hearings the Court may request. *Id*.

Plaintiffs also intend to request service awards of $2,500 each. S.A. ¶ 37. This too is presumptively reasonable. *See, In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *5 (N.D. Cal. July 22, 2020) ("Half of the Settlement Class Representatives seek $5,000 or less, which is considered 'presumptively reasonable' in this district.") (citation omitted).

### F.   Comparison of Settlement Benefits Against Full Recovery

The benefits made available under this Settlement give Plaintiffs and Class Members cash, credit and identity theft protection, and cybersecurity enhancements, which is beyond what Class Members would be seeking on their best day in Court.

If Plaintiffs had prevailed at trial, they would have sought recovery for their out-of-pocket losses and the cost of obtaining credit monitoring. Plaintiffs believe that the $5,000 cap for out-of-pocket expenses will likely make each class member whole. According to the Federal Trade Commission's Identity Theft Survey Report, 85 percent of identity theft victims report the misuse of existing accounts and 17 percent of victims report new accounts being opened in their name. Joint Decl., ¶ 44. For those identity theft victims who had misuse of existing accounts, the average out-of-pocket loss was $500, while the average loss for improperly opened accounts was $1,200. *Id*.

---

PLAINTIFFS' NOTICE OF MOTION, UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:23-CV-01131-RFL

Moreover, only a maximum of 6 percent of those who had improper use of existing accounts had out-of-pocket losses of $1,000 or above, and 16 percent of those that had accounts opened in their name had losses of $1,000 or above. *Id*. This recovery for out-of-pocket losses is then combined with the *pro rata* cash payment to make Class Members whole. Thus, while Plaintiffs acknowledge that there could be individuals who would be able to achieve greater recovery if this matter went to trial, the overwhelming number of eligible Class Members will have the opportunity to be made whole by this Settlement.

With respect to statutory damages under the CCPA, if successful at trial, the approximately 45,236 California Settlement Class Members would each be entitled to between $100 and $750 per individual. Cal. Civ. Code Ann. § 1798.150(a)(1)(A)). This is between approximately $4,523,600 and $33,926,250 total. Ordinarily under the CCPA, however, a plaintiff is entitled to the greater of actual or statutory damages, but not both. *See id*. Here, California Settlement Class Members are eligible to receive $100, plus either the reimbursement of actual losses or a *pro rata* share of any remaining funds.

### G.   <u>Release</u>

The Settlement Agreement states that "[u]pon the Effective Date, each Settlement Class Member and Plaintiff, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged Nonstop of all claims based upon or arising out of the institution, prosecution, assertions, settlement, or resolution of the Action or the Released Claims, except for enforcement of the Settlement Agreement and except as to Class Members who submit a timeline and valid Request for Exclusion from the Settlement." S.A. ¶ 6.

"Released Claims" are defined as "any and all claims and causes of action including, without limitation, any causes of action under or relying on California or other state law; Federal law; the Health Insurance Portability and Accountability Act; the Federal Trade Commission Act; California Unfair Competition Law; California Consumer Privacy Act; California Confidentiality of Medical Information Act; California Customer Records Act; Colorado Security Breach Notification Act; Alaska Personal Information Protection Act; New York Information Security Breach and Notification

Act; Alaska Consumer Protection Act; Colorado Consumer Protection Act; New York General Business Law 349; negligence; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy/intrusion upon seclusion; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Incident and alleged compromise of personally identifiable information, protected health information, or other personal information or the allegations, facts, or circumstances described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class." S.A. ¶ 24 1.1.

## VI.   ARGUMENT

Courts within the Ninth Circuit strongly favor class action settlements where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class

action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs seek certification of a Settlement Class consisting of approximately 115,649 individuals. For the reasons set forth below, the Court should certify the Settlement Class for settlement purposes and preliminarily approve the Settlement.

### A. The Settlement Satisfies Rule 23(a)

Before assessing the Parties' settlement, the Court should first confirm the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for Complex Litigation* (Fourth), § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. FRCP 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

#### 1. The Proposed Class is Sufficiently Numerous

Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *See, e.g., Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members). Numbering approximately 115,646 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement.

#### 2. The Settlement Class Satisfies the Commonality Requirement

The Settlement Class satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, *inter alia*, whether Nonstop engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in

the Data Breach; whether Nonstop owed a duty to Plaintiffs and Class Members; whether Nonstop breached its duties. Accordingly, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3.   Plaintiffs' Claims and Defenses are Typical to Those of the Class

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect Plaintiffs' and Class Members' PI, are "reasonably coextensive with those of the absent class members." *See* FRCP 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class.

### 4.   Plaintiffs Will Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. FRCP 23(a)(4); *see also, Ellis*, 657 F.3d at 985, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who received data breach notifications from Nonstop and experienced the same injuries and seek, like other Class Members, compensation for Nonstop's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members. Further, proposed Class Counsel have decades of combined experience handling complex class action cases including over 100 data breach class actions in state and federal courts around the United States. Joint Decl., ¶ 38. Thus, Plaintiffs satisfy the requirement of adequacy.

1

2

**B.    The Requirements of Rule 23(b)(3) Are Met for Settlement Purposes**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under FRCP 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*.

**1.    Common Questions Predominate**

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See, Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012), quoting *Hanlon*, 150 F.3d at 1022.

Consistent with the position on commonality, Plaintiffs allege that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (alterations in original), quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019). Plaintiffs' claims depend on whether Nonstop used reasonable data security measures to protect consumers' PI. That question can be resolved using the same evidence for all Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ….'") (citation omitted).

### 2. Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3).

First, adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See, Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See, Local Joint Exec. Bd. of Culinary/ Bartender Tr. Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also, Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). *See* FRCP 23(b)(3); Second, there are no other individual actions currently pending arising from this Data Breach. *See, Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN NLS, 2013 WL 444619, at *3 (S.D. Cal. Feb. 5, 2013) (superiority met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and the "small individual claims of class members" made it "unlikely that individual actions will be filed"). Third, this forum is home to the Defendant, and a large proportion of the class members.

Finally, because the claims are being certified for purposes of settlement, there are no issues with manageability. Resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### C.   The Settlement Should be Preliminarily Approved Pursuant to Rule 23(e)

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." *Id*. If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*. Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id*. "In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Servs., Inc*., No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007). As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transps. Inc*., No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). With respect to the substantive component, "[a]t this preliminary approval stage, the court need only

'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010), quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. FRCP 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See, Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiffs' Case

This case involves a proposed class of approximately 115,649 individuals (each of whom, Nonstop has argued, would need to establish cognizable harm and causation); a complicated and technical factual background; and a motivated Defendant that already has provided some relief to Class Members through providing complimentary credit monitoring. Notwithstanding, Plaintiffs believe they have and would continue to build a strong case for liability if this matter were to continue.

### 2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs believe they have strong claims, their success is not guaranteed. It is "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., *Inc.*, No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Furthermore, Nonstop fully opposes Plaintiffs' claims. Thus, this factor favors approval.

### 3.   The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case survived Defendant's Motion to Dismiss, in part, the Parties have not briefed, and the Court has not yet certified, any class treatment of this case. If they were to proceed to litigate their claims through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK (MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and more recently in *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (vacated in part *Green-Cooper v. Brinker Intl., Inc.,* 73 F. 4th 883 (11th Cir. 2023), where a class was certified over objection to plaintiffs' damage calculation. Most recently, class certification was granted in part and denied in part in *In Re Marriott Int. Inc. Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522

(D. Md. May 3, 2022) (vacated and remanded *In re Marriott Int. Inc.,* 78 F.4th 677 (4th Cir. 2023)) (reinstated on remand *In re Marriott Int. Inc. Customer Data Security Breach Litig.,* 345 F.R.D. 137 (M. Md. 2023) (certifying several classes in a data breach class action). While certification of additional consumer data breach classes may well follow, it still remains a substantial risk for Plaintiffs in this case.

### 4.   The Amount Offered in Settlement

As noted above, each Class Member is eligible to make a claim for monetary benefits out of the $1.6 million non-reversionary common fund. Additionally, Plaintiffs have negotiated certain cybersecurity enhancements that Nonstop has implemented as a result of this lawsuit and will maintain that have substantial value to the Class. This settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. Because the settlement amount here is similar to or exceeds other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See, Calderon v. Wolf Firm*, No. SACV 16-1622-JLS (KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases).

Here, the settlement has an approximate value of $13.83 per class member, not including the value of the security enhancements.[6] In comparison, this District recently granted final approval of a $5 million settlement reached at the pleading stage of a data breach action involving approximately 3.82 million class members. *See, Cochran v. Kroger Co.*, No. 5:21-CV-01887-EJD, 2022 WL 2126696, at *2 (N.D. Cal. Mar. 24, 2022). This was an average value per class member of $1.31. *Id.*, Doc. 31 at 33. An objection argued that the value of this settlement was too low, Doc. 107, but this District overruled the objection, finding it lacked merit. *See id.*, 2022 WL 2126696, at *2.

The settlement reached in this case also compares favorably to past settlements which have been approved by courts in this and other districts. For example, in *In Re: Hanna Andersson and Salesforce.com Data Breach Litigation*, Master File No. 3:20-cv-00812-EMC (N.D. Cal.), in a data

---

[6] $1,600,000 / 115,649 = 13.8349.

breach impacting approximately 200,000 settlement class members a common settlement fund of $400,000 was created, providing for a recovery of $2.00 per class member. *Pygin v. Bombas, LLC, et al.*, Case No. 20-cv-04412-JSW (N.D. Cal.) provides another favorable comparison where there was a settlement fund of $225,000.00 for a class of approximately 83,000 persons, providing for a recovery of approximately $2.71 per class member. Finally, in *Gaston v. FabFitFun, Inc.*, 2:20-cv-09534-RGK-E (C.D. Cal.) a fund of $625,000 was created for a class of approximately 441,160, providing for a recovery of $1.42 per class member. The instant settlement, providing for a fund worth approximately $29.41 per class member compares very favorably with these past data breach settlements.

### 5.   The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). Here, the Parties initiated formal discovery and also engaged in a slew of informal discovery. Plaintiffs' counsel has gathered sufficient and reliable information that was available regarding Nonstop and the Data Breach. Plaintiffs also propounded and responded to formal discovery requests and Defendant produced over 1,000 pages of documentary evidence that allowed Counsel to understand the means and scope of the Data Breach, Defendant's cyber security posture, and the nature of the PII/PHI exfiltrated and the size and scope of the Class. Joint Decl. ¶ 14. The Parties also informally exchanged non-public information concerning the Data Breach and the size of the Class in preparation for a successful mediation. *Id*.

Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to evaluate the risks and value of the litigation and adequately represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. *Id*. ¶¶ 43-46. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-

VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.   Class Counsel's Experience and Views

Class Counsel assisted Plaintiffs in initiating this lawsuit when Nonstop announced the Data Breach, which, Defendant has since informed Plaintiffs, impacted approximately 115,649 individuals. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. Joint Decl. ¶ 38. Having worked on behalf of the putative class since the Data Breach was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully support the Settlement. Joint Decl. ¶ 46. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, No. 1:14-cv-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.   Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8.   The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Joint Decl. ¶ 36.

### 9.   Lack of Collusion Among the Parties

The parties' arms'-length negotiations resulted in a settlement that provides broad and substantial value to the Class with substantial monetary compensation and injunctive relief (*i.e.*, enhanced security). Furthermore, Class Counsel and Nonstop's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.   The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*.

Such notice must be the "best notice practicable," *see* FRCP 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must again be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. FRCP 23 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll Settlement Administration, LLC—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via mail. Passarella Decl. ¶¶ 6-10. The costs of administering the Settlement will be paid from the Settlement Fund. S.A. ¶ 51. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. Joint Decl. ¶¶ 20-21.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Postcard Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement and other key documents. S.A. ¶¶ 36, 49. The Settlement Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement

---

Class Members with additional information about the settlement. *Id.* ¶ 49. Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See, Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019).

### E.   Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Kroll Settlement Administration, LLC ("Kroll") to serve as the Settlement Administrator. Kroll has a trusted and proven track record of supporting thousands of class action administrations. Passarella Decl., ¶ 2.

### F.   Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." FRCP 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. FRCP 23(g)(1)(A)(i–iv). Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Joint Decl. ¶ 38; Exhs. A, B.

Plaintiffs respectfully request that the Court appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Class Counsel and Scott E. Cole of Cole and Van Note as Class Counsel.

## VII.   CONCLUSION

For all the above reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

1

Dated: September 13, 2024

Respectfully submitted,

2

_/s/ Gary M. Klinger_____
Gary M. Klinger, Esq. (*pro hac vice*)

3

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

4

227 W Monroe Street, Suite 2100
Chicago, Illinois 60606

5

Telephone:    (866) 252-0878

6

Email: gklinger@milberg.com

7

John J. Nelson

8

*jnelson@milberg.com*
**MILBERG COLEMAN BRYSON**

9

**PHILLIPS GROSSMAN PLLC**
402 W Broadway, Suite 1760

10

San Diego, CA 92101

11

Telephone: (858) 209-6941

12

Scott Edward Cole, Esq. (S.B. # 160744)

13

Laura Van Note Esq. (S.B. #310160)
**COLE & VAN NOTE**

14

555 12th Street, Suite 2100
Oakland, California 94607

15

Telephone:    (510) 891-9800

16

Facsimile:    (510) 891-7030
Email: sec@colevannote.com

17

Email: lvn@colevannote.com

18

19

*Attorneys for Plaintiffs and the Proposed Class*

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Gary M Klinger*
Gary M. Klinger