BRANDON M. MOORE
100 Haven Ave Apt 16A
New York, NY 10032
Telephone: (858) 349-2257
Email: brandon.moore21@att.net

BRANDON M. MOORE, IN PRO PER

FILED
JAN 10 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN PRUTSMAN, AMIRA MARTZ, SIMCHA RINGEL, NAIOMI MARDEN, ALANA BALAGOT, CORRINE WARREN, SUNNY LAI, and DAVID KLEIN, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NONSTOP ADMINISTRATION AND INSURANCE SERVICES, INC., inclusive,<br><br>Defendant. | Case No.: 3:23-cv-011131-RFL<br><br>**CLASS MEMBER OBJECTION TO PROPOSED SETTLEMENT**<br><br>**NOTICE OF INTENT TO ATTEND FINAL APPROVAL HEARING** |

I, Brandon M. Moore, respectfully submit this timely OBJECTION to the proposed Settlement Agreement in this action (*Prutsman et al. v. Nonstop Administration and Insurance Services, Inc., No: 3:23-cv-011131-RFL*) to the Court and state as follows:

### STATEMENT OF FACTS

1. My full legal name is Brandon Michael Moore and I am a California Subclass Member in the above-referenced action (Class Member ID: 830968DQV5H0B; see Attachment A). My current mailing address is 100 Haven Ave., Apt 16A, New York, NY 10032, and my current telephone number is (858) 349-2257. I am not currently represented by counsel.

- 1 -

2. From approximately November 1, 2022 to June 30, 2023, I was a participant in the San Ysidro Health Medical Expense Reimbursement Plan (MERP) administered by Nonstop Administration and Insurance Services, Inc. (the Defendant) as an eligible employee of Centro de Salud de la Comunidad de San Ysidro, Inc. ("San Ysidro Health"), a California corporation with a principal place of business at 1601 Precision Park Lane, San Diego, CA 92173.

3. At all relevant times, including from December 22, 2022 to the present, I have been domiciled in and a resident of California within the meaning of Cal. Code Regs. Tit. 18, § 17014(a)(2), as I am living outside the state for a "temporary or transient purpose." My permanent (residence) address is 5010 Camino Playa Portofino, San Diego, CA 92124.

## OBJECTION TO PROPOSED SETTLEMENT

I. **Class Members are Exposed to Significant Future Financial and Legal Risks that are Insufficiently Remedied by the Proposed Settlement.**

4. On January 19, 2023, I received a "Compromised Social Security Number" alert from Experian stating that my full name, Social Security Number (SSN), date of birth (DOB), and permanent address were found together on the "dark web." To my knowledge, this was the first time that my SSN was exposed, and as such, I immediately froze my credit reports and placed consumer fraud alerts on my files with Experian, Equifax, TransUnion, ChexSystems, and LexisNexis. Shortly thereafter, on February 11, 2023, I was notified for the first time of the Nonstop data breach, which was discovered less than a month before my personally identifiable information (PII)/protected health information (PHI) appeared online.

5. Despite my efforts to protect and secure my PII/PHI, since that time, at least two checking accounts at U.S. financial institutions have been fraudulently opened in my name with my stolen PII. Thankfully, to date, my only out-of-pocket expenses related to those events

have been nominal, consisting only of the time and postage needed to report these fraudulent activities to the financial institutions and to file police reports.

6. The Proposed Settlement currently allows Class Members to submit claims for Out-of-Pocket Losses incurred by the (rapidly-approaching) Claims Deadline up to $5,000, or alternatively, a *pro rata* Alternative Cash Payment of $50. This arrangement is fundamentally unfair, as it places the interests of Class Members who have already suffered significant economic harm due to the Defendant's conduct above those who face the <u>threat</u> of significant economic harm in the future due to the Defendant's same conduct. **Due to the delayed/indolent nature of identity theft and other financial crimes, there is a potentially significant proportion of Class Members who have not yet suffered significant economic harm due to Defendant's conduct, but will in the future.** See e.g. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (holding that plaintiffs whose names and social security numbers had been stolen faced "a credible threat of harm" that was "both real and immediate, not conjectural or hypothetical"); *Pisciotta v. Old National Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (holding that plaintiffs whose data had been stolen but not yet misused had suffered an injury-in-fact sufficient to confer Article III standing). **Our needs are unaccounted for by the Proposed Settlement.** Instead of a trivial Alternative Cash Payment (which *any* class member can choose, even those who did suffer Out-Of-Pocket Losses), damages for those Class Members who have not yet suffered significant financial losses should be more seriously considered, "separately" from those of the Class Members who have already incurred Out-Of-Pocket Losses. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), quoting Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123–124 (3d ed. 2005) (discussing class certification under Fed. R. Civ. Proc. 23(b)(3)).

7. <u>Regardless</u> of if Class Members have already suffered economic harm due to the Defendant's conduct, **we *all* will continue to be exposed to significant financial risks long after the February 12, 2025 Claims Deadline passes.** In addition to the risk of

financial fraud, the combination of PII negligently exposed by the Defendant leaves us vulnerable to medical/insurance fraud, tax fraud, fraudulently incurred civil debts, and potential criminal liability/false imprisonment for crimes committed by bad actors who have assumed our identities using our exposed PII. Neither the $50 offered as an Alternative Cash Payment, nor the up to $5,000 offered for out-of-pocket losses already incurred, are remotely sufficient to guard against these extensive <u>future</u> risks, which Class Members will shoulder for the rest of our lives.

8. Personally, as a medical student who will be seeking professional licensure in California or elsewhere in the future, the threat of incurring undue criminal or civil liability due to identity theft, brought about by the Defendant's conduct, is especially great, and could impair my ability to practice medicine, obtain gainful employment, repay my student loans, etc. Additionally, my confidential medical information (PHI) that is now available online due to the Defendant's conduct represents an additional loss of privacy that could further impair my ability to obtain gainful employment, attract and retain patients, and otherwise freely engage in the practice of medicine.

9. These risks are not addressed whatsoever by the Settlement, which proposes to indemnify Class Members only for the losses they may have incurred due to the Defendant's conduct over a relatively short (26 month) period. In reality, Class Members are likely to endure significant losses as a direct result of the Defendant's conduct long into the future, which cannot possibly be mitigated by the trivial cash payment(s) that the Settlement proposes to provide. Conspicuously, the Proposed Settlement lacks a long-term mechanism to reimburse/indemnify Class Members for these future losses, which has been successfully employed in other data breach litigation; instead, it addresses this issue by enjoining Class Members from seeking redress for any and all losses stemming from this incident after the Claims Deadline passes. This tactic benefits both the Defendant (by capping the liability for its actions) and Plaintiffs' Attorneys (by ensuring a quick payout), but is injurious to

the interests of all Class Members and is tantamount to a violation of our due process rights.

10. Case law in this Circuit and in California state courts recognizes the need to compensate individuals for <u>future</u> harm that is likely to stem from a party's negligent acts. See *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1009, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993) (holding that "medical monitoring costs…are a compensable item of damages in a negligence action…[when] the need for future monitoring is a reasonably certain consequence of the plaintiff's toxic exposure"). More recently, this has grown to include data breach cases in which credit monitoring has been determined to be a necessary remedy to guard against future harm. See e.g. *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK (Ex), 2015 WL 3916744, at *4-5 (C.D. Cal. June 15, 2015); *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, --- F. Supp.3d ----, ----, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020); *Stasi v. Inmediata Health Grp. Corp.*, No. 19cv2353 JM (LL), 2020 WL 6799437, at *9-11 (S.D. Cal. Nov. 19, 2020). **This Court is therefore urged to consider the risk of future harm that will be borne by Class Members due to the Defendant's conduct, and in turn, consider how the Proposed Settlement fails to substantively address these risks.**

II. **Class Members Need Identity Monitoring and Restoration Services and <u>Identity Theft Insurance</u> in Perpetuity Due to the Defendant's Conduct.**

11. The enduring financial and legal risks that will be borne by Class Members due to the Defendant's conduct could be mitigated by the creation of a perpetual Settlement Fund that indemnifies Class Members for losses related to the data breach beyond the February 2025 Claims Deadline, but they could also, and perhaps more easily and cheaply, be mitigated by establishing <u>long-term</u> credit/identity monitoring, restoration, and, perhaps most importantly, comprehensive <u>identity theft insurance</u> entitlements for Class Members.

12. Indeed, California law acknowledges the need for "identity theft prevention and mitigation services" to be "provided at no cost" to affected parties by the sources of data breaches. Cal. Civ. Code § 1798.82(d)(2)(G).

13. In the wake of the data breach, the Defendant complied with the plain-language requirements of § 1798.82(d)(2)(G) by offering Class Members identity monitoring services and $1 million in identity theft insurance for two years through Identity Theft Guard Solutions, Inc. (d/b/a IDX). However, this coverage is set to expire in less than three months, on March 24, 2025, and is nonrenewable. **Moreover, the Proposed Settlement contains no provision for Class Members to receive additional credit monitoring and identity theft insurance as part of the Settlement, contravening case law in this Circuit.** See e.g. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 327 F.R.D. 299, at *322 (N.D. Cal. Aug. 15, 2018) (approving a settlement offering Settlement Class Members up to $50 in cash payments <u>or</u> four additional years of credit monitoring, for a total of six years of credit monitoring); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, at *23 (N.D. Cal. Jul. 22, 2020) (holding that a settlement providing only two years of credit monitoring to Class Members "<u>compares unfavorably to the provision of credit monitoring in *Anthem*</u>").

14. While Class Members have the option to acquire identity monitoring and identity theft insurance independently in the future using the Cash Payment(s) proposed by this Settlement, commercially available identity monitoring and insurance coverage that <u>fully</u> shields consumers from the risks of identity theft (namely, criminal records searches, etc. in addition to standard credit monitoring) currently ranges from a $24/month (Aura, https://buy.aura.com/best-fraud-protection; non-promotional price, billed monthly) to $34.99/month (Norton LifeLock, https://lifelock.norton.com/#planschart; billed monthly); see Attachment B. Using the lowest-cost product in this range, Class Members could afford, at best, slightly more than 2 months of coverage using the $50 Alternative Cash Payment that the Settlement proposes (if paying on a monthly basis); California

Subclass Members could afford, at best, 6.25 months of coverage using the $100 + $50 Cash Payments that the Settlement proposes (if paying on a monthly basis). At worst, if Class Members have already incurred Out-of-Pocket Losses that they are seeking reimbursement for (instead of the Alternative Cash Payment), they would be left without any protection for future losses whatsoever after their IDX memberships expire this year. While the risk of identity theft will be present for the rest of Class Members' natural lives, prior case law in this Circuit has highlighted that the risk of identity theft is greatest within the first five years following a data breach; the coverage that Class Members could obtain independently using the Cash Payments do not come close to covering this period of heightened risk. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 327 F.R.D. 299, at *322 (N.D. Cal. Aug. 15, 2018).

15. Additionally, commercially available identity theft insurance contracts often exclude existing data breach events from coverage under the terms of the policy, meaning that even if Class Members were to use the Cash Payments provided by the Proposed Settlement to purchase identity theft insurance for themselves for a limited period of time, they may find themselves without coverage in the event of a claim. See e.g. the "Insurance Summary of Benefits" for Aura, discussed *supra*: https://www.aura.com/legal/insurance-summary-of-benefits#Exclusions ("The following is not covered…**loss** resulting from an **identity fraud** that was discovered prior to the effective date of the Policy under which this coverage is provided," Exclusions, §(b)).

16. **As such, the Cash Payment(s) proposed by the Settlement are clearly <u>insufficient</u> to indemnify Class Members for the significant financial and legal risks they will face for many years into the future due to the Defendant's conduct.** Approving the Proposed Settlement as-is would be injurious to Class Members' rights and would therefore be a miscarriage of justice.

17. Under the California Consumer Privacy Act of 2018 ("CCPA") and California Privacy Rights Act of 2020 ("CPRA"), consumers have the right to institute a civil action to

recover statutory damages and "any other relief the court deems proper" for the breach of personal information. Cal. Civ. Code § 1798.150(a)(1)(C). **This Court is therefore empowered to stipulate that the Defendant provides <u>long-term</u> identity monitoring & identity theft insurance to Class Members (or, at the very least, California Subclass Members) to adequately protect their interests as a condition of approving the Proposed Settlement.** Granted that there are "thousands or tens of thousands" of Class Members in need of identity monitoring & identity theft insurance (Consolidated and Amended Complaint for Damages, Injunctive and Equitable Relief, para. 55(a)), **the Defendant is uniquely positioned to negotiate and obtain long-lasting coverage for Class Members** that is not subject to the exclusionary clauses that exist in commercially available identity theft insurance policies.

III. **Class Members' Rights Cannot Be Adequately Protected by Excluding Themselves from the Proposed Settlement.**

18. Although prospective Class Members are afforded the ability to opt out of the Proposed Settlement prior to the Claims Deadline, Class Members that exclude themselves are unlikely to be able to obtain adequate relief by suing the Defendant independently.

19. First, Class Members that exclude themselves from this action and sue the Defendant independently are unlikely to be able to compel the Defendant to obtain long-term identity monitoring & insurance on their behalf, which, as discussed in Paragraphs 10-16, is the <u>single-most important</u> form of relief for Class Members to obtain to safeguard their financial security. In contrast, **due to the sheer number ("thousands or tens of thousands") of Class Members involved in this action, this Court has the ability to consider the risk that the Defendant's conduct portends to thousands of affected individuals & society as a whole, and compel the Defendant to act to prevent some of those harms from occurring.**

20. Second, Class Members that exclude themselves from this action are unlikely to be able to obtain adequate legal representation to sue the Defendant independently, at least

without significant personal expense. Notwithstanding the negligence, breach of implied contract, invasion of privacy, and UCL claims raised in the Consolidated and Amended Complaint for Damages, Injunctive and Equitable Relief ("Complaint"), **the avenues for statutory relief that may be available to Class Members who exclude themselves from the Proposed Settlement, which may be less burdensome to prove than the other causes of action, cap or do not provide for the recovery of attorneys' fees.** Namely, for California Subclass Members, the CCPA/CPRA does not provide for the recovery of attorneys' fees (Cal. Civ. Code § 1798.150(a)(1)); the Confidentiality of Medical Information Act ("CMIA") caps attorneys' fees at $1,000 (Cal. Civ. Code § 56.35). The combination of these factors makes it unlikely that a competent attorney would choose to represent a (former) Class Member on a contingency basis. Therefore, given the extraordinary cost of litigation, only those (former) Class Members with significant financial resources would be able to obtain a fair chance at obtaining adequate relief from Defendant in a separate action.

21. Therefore, Class Members' interests are likely to be best protected by this action, so long as the Defendant chooses to (or is compelled to) obtain identity monitoring & identity theft insurance coverage for Class Members, as previously discussed.

IV. **The Proposed *Pro Rata* Cash Awards Fail to Protect California Settlement Class Members' Rights Under California Law, Representing a Failure of Plaintiffs' Attorneys to Vigorously Prosecute this Action.**

22. Notwithstanding the arguments made in Paragraphs 10-16, the Proposed Settlement additionally fails to secure adequate monetary relief for California Subclass Members pursuant to California state statutes.

23. In addition to claims for negligence, breach of implied contract, invasion of privacy, and UCL claims, the Complaint additionally cites causes of action under the CCPA/CPRA, which allows the recovery of up to $750 in damages per consumer per data breach incident (Cal. Civ. Code § 1798.150(a)(1)), as well as the CMIA, which allows patients to recover

up to $3,000 in punitive damages (in addition to compensatory damages) (Cal. Civ. Code § 56.35) and $1,000 in nominal damages (Cal. Civ. Code § 56.36(b)(1)) for the misuse of their PHI. Therefore, California Subclass Members are potentially eligible to recover up to $4,750 in <u>statutory damages alone</u> stemming from this incident.

24. However, the Settlement proposes to offer California Subclass Members only $150 – of which only $100 stems from the California causes of action. Furthermore, these payments are subject to *pro rata* decreases to accommodate the payment of Plaintiffs' Attorneys' Fees and Costs, making it such that California Subclass Members may receive <u>less</u> than the minimum $100 in damages that are mandated by the CCPA/CPRA (Cal. Civ. Code § 1798.150(a)(1)(A)).

25. Accordingly, <u>based on statutory damages alone</u>, California Subclass Members in this case stand to recover only 3.1%, *or less*, of their potential total recovery under the CCPA/CPRA and CMIA. Not only is this unconscionable, given that California Subclass Members will be shouldered with the risk of significant financial harm stemming from this incident for the rest of their lives, it also calls into question the vigor with which the Plaintiffs and Plaintiffs' Attorneys are prosecuting this action. Fed. R. Civ. Proc. 23(a)(4) ("the representative parties will fairly and adequately protect the interests of the class"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (Adequacy of representation requires that "named plaintiffs and their counsel prosecute the action vigorously on behalf of the class").

26. Furthermore, a <u>maximum</u> 3.1% recovery for California Subclass Members (again based on the CCPA/CPRA and CMIA claims alone) contravenes case law in this Circuit regarding the range of reasonableness for Class Member recoveries in class actions. See e.g. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 327 F.R.D. 299, at *319 (N.D. Cal. Aug. 15, 2018) (approving a Settlement Fund representing approx. 14.5% of Settlement Class Members' projected recovery); *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-CV-017788-JST, 2016 WL 344532, at *5 (N.D. Cal. Jan 28,

2016) (concluding that a settlement providing 9.7% of the total potential recovery was within the range of reasonableness); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (concluding that a settlement providing 10% of the total potential recovery was within the range of reasonableness). **The 3.1% projected recovery for California Subclass Members under the terms of the Proposed Settlement is at least three times *less* than what has previously been deemed acceptable in the Ninth Circuit.**

27. For purposes of illustration, presuming that the California Subclass Members recovered the full $4,750 in statutory damages available to them under the CCPA/CPRA and CMIA instead of only 3.1% of this amount, they could afford nearly 198 months (approx. 16.5 years) of identity monitoring & identity theft insurance coverage using the lowest-cost option discussed *supra*. This would represent a significantly more substantive recovery than what is contemplated in the Proposed Settlement, and protect California Subclass Members' rights much more vigorously – reducing the likelihood that they will bear significant financial and legal risks in the future due to the Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, the Proposed Settlement fails to vigorously protect the interests of all Class Members by neglecting to provide them with a reasonable mechanism to shield themselves against the impending future financial and legal risks precipitated by the Defendant's conduct; and

WHEREFORE, the Proposed Settlement fails to specifically protect the interests of California Subclass Members by offering them damages equating to only 3.1% of their potential recovery under California state statutes, representing a failure of Plaintiffs and Plaintiffs' Attorneys to vigorously prosecute this action; and

WHEREFORE, due to the number of affected individuals in the Class, Class Members have the greatest chance of obtaining a meaningful recovery by remaining in the Class, instead of requesting to exclude themselves, so long as the Court moves to compel the Parties to more

substantively shield Class Members against the future risks they will most certainly face as a result of the Defendant's conduct;

Now THEREFORE, I respectfully ask the Court to DENY the Parties' motion(s) to approve the Proposed Settlement, and to take the following actions:

1. MANDATE that any Proposed Settlement must provide for long-term identity monitoring and <u>identity theft insurance coverage</u> for Class Members as a condition of being approved by this Court; or alternatively, MANDATE that a perpetual fund to reimburse Class Members' <u>future</u> expenses arising out of the data breach be established by the Parties as a condition of approving the Settlement; and

2. MANDATE that any Proposed Settlement must provide for a more substantive recovery for California Subclass Members, including under the provisions of the CCPA/CPRA and/or CMIA, as a condition of being approved by this Court.

3. If (1) and (2) are not possible, ORDER this action to proceed to trial.

## NOTICE OF INTENT TO ATTEND FINAL APPROVAL HEARING

The Court and the Parties to this action are hereby notified that I intend to attend the Final Approval Hearing for the Proposed Settlement. I respectfully request the option to attend the hearing telephonically or via video conference, if such an option is available.

DATED: January 6, 2025

_____
BRANDON M. MOORE
In Pro Per

# ATTACHMENT A

*Nonstop Data Breach*
c/o Kroll Settlement Administration LLC
PO Box 5324
New York, NY 10150-5324

**ELECTRONIC SERVICE REQUESTED**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
MAPLE GROVE, MN
PERMIT NO. 349

**CLASS NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

*Prutsman, et al. v. Nonstop Administration and Insurance Services, Inc.*
Case No. 3:23-cv-011131-RFL
United States District Court for the Northern District of California

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR LEGAL RIGHTS MAY BE AFFECTED. A CLASS ACTION SETTLEMENT HAS BEEN REACHED UNDER WHICH YOU MAY BE ENTITLED TO A PAYMENT OR OTHER RELIEF.**

*This is a Court-authorized Class Notice of a proposed class action Settlement. This is not a solicitation from a lawyer and is **not** notice of a lawsuit against you.*



CLASS MEMBER ID: 830968DQV5H0B

Postal Service: Please do not mark barcode

\*\*\*AUTO\*\*ALL FOR AADC 100 T47  P2
BRANDON MOORE
100 HAVEN AVE APT 16A
NEW YORK, NY 10032-2624



ATTACHMENT B

# AURA

**Identity & Fraud Protection**

## Individual

1 adult, 10 devices

## $12.99/mo   Save 45%

Renews at $24 per month

**Get Protection Now →**

## Identity Theft Protection

- ✓ $1 Million Identity Theft Insurance*
- ✓ Account Breach Alerts

---

# LifeLock Ultimate Plus

Individual

○ Paid annually  $19.99/month 1st yr.
42% OFF*  Pay $239.88 today.
Renews at $339.99/yr.

● Paid monthly  $34.99/month

**Start membership**

Pricing details below.*

Up to $3,000,000 coverage.[†††]

- ✓ Up to $1 million for Lawyers and Experts
- ✓ Up to $1 million in Stolen Funds Reimbursement
- ✓ Up to $1 million in Personal Expense Reimbursement
- ✓ Identity & Social Security Number Alerts[†]
- ✓ Credit Monitoring Coverage: Three bureaus[3]
- ✓ Identity Lock: TransUnion Credit File Lock, NEW! Payday Loan Lock[3,12,†]
- ✓ Phone Takeover Monitoring
- ✓ Alerts on Crimes Committed in Your Name
- ✓ Buy Now Pay Later Alerts
- ✓ Credit Reports & Credit Scores: One bureau: Unlimited (updates available daily) Three bureaus: Annual[5]
- ✓ 401(k) & Investment Account Alerts[†]
- ✓ Home Title Monitoring
- ✓ Social Media Monitoring

US POSTAGE IMI 044850106165005  2000391690
$10.45
SSK
PM

01/06/25  Mailed from 10032  028W2311275

# PRIORITY MAIL®

BRANDON M MOORE
100 HAVEN AVE APT 1617
NEW YORK NY 10032-2645

3.80 oz
RDC 03

EXPECTED DELIVERY DAY: 01/10/25



RECEIVED
JAN 10 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

C004

SHIP TO:



CLERK OF THE COURT
UNITED STATES DISTRICT COURT
450 GOLDEN GATE AVE
SAN FRANCISCO CA 94102-3661

## USPS TRACKING® NUMBER



9505 5067 1966 5006 1259 14





USPS.COM/PICKUP

